Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7715 | **DATE** | 3/19/2004 |
| **CASE TITLE** | USA ex rel MARK S. KARRAS, SR. vs. BLAIR LEIBACH, Warden | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court hereby grants respondent's motion to dismiss the petition for a writ of habeas corpus. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 22 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 17 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | MAR 22 2004 | |
| | | | date mailed notice | |
| TBK | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MARK S. KARRAS, SR., <br><br> Petitioner, <br><br> v. <br><br> BLAIR LEIBACH, Warden, <br><br> Respondent. | 02 C 7715 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

MAR 2 2 2004

Petitioner Mark Karras ("Karras") is in the custody of Respondent Warden of the Danville Correctional Center, Danville, Illinois. In 1999, Karras was convicted of the offenses of aggravated criminal sexual assault, criminal sexual assault, attempted robbery, and unlawful restraint. Karras was sentenced to respective concurrent terms of fifteen years and three years in prison. After filing several post-conviction petitions, Karras now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss on the grounds that each claim is either procedurally defaulted or without merit. For the reasons stated below, the petition for writ of habeas corpus is denied.

## FACTUAL BACKGROUND[1]

At about 5 a.m. on February 18, 1997, Karras and the complainant engaged in sexual intercourse in a gangway near 73rd Street and East End Avenue in Chicago. Complainant

---

[1] When considering a habeas corpus petition the Court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254; *see Biskup v. McCaughtry*, 20 F.3d 245, 248 (7th Cir. 1994). Unless otherwise noted, the Court adopts the facts as set forth by the Illinois Appellate Court in *People v. Karras*, No. 1-00-2530 (1st Dist. May 14, 2001).

maintained that she was forced to commit the sexual act while Karras portrayed the complainant as a cocaine addict willing to commit an act of prostitution to share his cocaine.

Complainant testified that she had just left her sister's residence at 7132 South East End and was walking toward a bus stop on 75th Street in order to go home where she lived with her three children and her grandmother in the Chatham area of Chicago. She saw Karras come out of a building at 72nd Street and East End. She testified that they exchanged greetings and as she continued walking, she noticed the petitioner walking behind her. As she approached 73rd Street, Karras attacked and tackled her, knocking her down into the snow and causing her clothing to become wet on one side.

The complainant testified that Karras then pulled her into a gangway by her throat. There, the petitioner stood behind her and forced her to stand facing the against the wall. He asked her if she had any money and when she said she didn't, Karras seemed angry. He told her that he had a gun. He went through her jogging pants' pockets and removed several items including a pack of cigarettes, rubber bands, and some coins. Next, the complainant testified that Karras pulled down the jogging pants and had sexual intercourse with her from behind for several minutes. Complainant said she did not scream because she was shaking and did not know what to do. She testified that after the rape, Karras seemed to calm down and told her that he had children and asked complainant to be his girlfriend. They began to walk around the area. After leaving the gangway, they saw a woman by a garage on 73rd Street and Karras said he wanted to rob her. Complainant said that the petitioner was not restraining her, but she did not flee, fearing defendant would shoot her if she did. Complainant denied that she was walking arm-in-arm with defendant, that she whispered to him, or that she put her head next to his head.

As they continued to walk, complainant saw a brown van which she believed might be

2

driven by a man whom she knew as Dan who delivered newspapers. She said that she was determined to leave defendant and told him to get away from her. She believed that the driver would possibly stop in order to get to know her if she was not with another man. Karras then stepped away from her, telling her to meet him at a local grocery store. Complainant told the driver of the van that she had just been robbed. She also warned a pedestrian that Karras had a gun and had just robbed her. The van driver offered to take her home, but complainant wanted cigarettes so they went to a gas station where the driver purchased some. Upon complainant's request, the driver went back to the area where she had encountered defendant. There, she saw police who had detained Karras by the grocery store. Complainant told police that he had robbed and raped her in a gangway. She was taken to a hospital where she was examined. She said that she did not sustain any bruising or experience pain from being tackled or dragged by defendant and none of her clothing was ripped.

Chicago police officer Alex Conway testified that he and his partner went to a grocery store at 73rd Street and Ridgeland Avenue just after the incident in question to investigate a report of a suspicious man. There police saw Karras using an exterior pay telephone. While detaining him, a van carrying complainant arrived, and she told the officers that Karras had a gun and had just raped her. Police did not find a gun on Karras.

Karras testified that he had been at a "dope building" on East End about 10:30 p.m. on February 17, 1997, when he saw complainant and a female companion who asked if "rocks" were being sold. He did not buy any cocaine at that time but returned at 5 a.m. the next day and bought some cocaine. He then encountered complainant outside the "dope building." She asked Karras if he had any cocaine, and when he said that he did, she replied that she had just smoked a "primo joint" and wanted more, suggesting that she and defendant have "sex for drugs." Karras,

3

at first, walked away with complainant following and offering to perform fellatio. Finding complainant attractive, he asked complainant where she wanted to go. She led Karras into a gangway where she produced a broken cigarette and paper. Karras gave her one-half of his cocaine which she mixed with the cigarette tobacco. They each smoked and complainant asked Karras if he was "ready." She pulled down her pants while he lowered his pants. When Karras could not attain an erection, complainant manually stimulated him. She then turned away from Karras and using her hands to brace herself against the building wall, she then backed against him pinning him against the wrought iron fence in the gangway in such a way that he could not even stand straight up. She then gyrated against him until he ejaculated. Complainant then retrieved her clothes, stating, "it was getting good." Karras got his clothing and, as he did so, he heard change fall from his pocket. He managed to recover fifty cents before he left the gangway. Karras denied that the gangway shown in police photographs was the one where the sexual encounter occurred.

## PROCEDURAL HISTORY

After a bench trial, the Honorable Bertina Lampkin found Karras guilty on February 5, 1998, of aggravated criminal sexual assault, criminal sexual assault, attempted robbery, and unlawful restraint. On May 24, 1999, Karras was sentenced to respective concurrent terms of fifteen years and three years in prison. Karras filed a pro se motion for new trial, which the court denied. Karras filed a motion to reconsider his sentence, which was denied on June 7, 1999. He then appealed to the Illinois Appellate Court and raised two issues. First, he claimed that he was not found guilty beyond a reasonable doubt because his testimony was more credible than the

complainant's. Second, he contended that the trial court was biased against him because it acted as a prosecutor, restricted the defense's cross-examination, and incorrectly remembered testimony. While his direct appeal was pending, Karras filed a pro se post-conviction petition, which alleged that he was denied effective assistance of counsel. Karras claimed, among other things, that the claimant's blood was not tested, certain witnesses were not called, arguments were not presented on the cross-examination of the claimant, and counsel did not discuss trial strategy with him. The trial court denied this motion on June 2, 2000.

Karras' public defender filed a motion to withdraw as appointed counsel on appeal pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), because he found no meritorious appellate issues. Karras responded to the *Finley* motion by asking the appellate court to deny the public defender's motion to withdraw. Karras claimed that his constitutional rights to due process, effective assistance of counsel, and equal protection would be violated by granting the motion to withdraw.

The Appellate Court consolidated Karras' direct appeal and his appeal from the denial of his post-conviction petition. The Appellate Court affirmed the trial court's decision and granted the public defender's motion for leave to withdraw as counsel. The Appellate Court agreed that Karras was found guilty beyond a reasonable doubt and determined that the trial court was not biased. In granting the motion for leave to withdraw, the Appellate Court agreed with the public defender that there were no arguable bases for relief.

Karras then filed a petition for late leave to appeal with the Illinois Supreme Court claiming that his constitutional rights to due process and equal protection were violated by the trial court's bias. Karras contends that the trial court showed bias by ignoring the rules concerning impeachment of a witness and by finding the complainant's testimony more

believable. The Supreme Court denied Karras' petition.

On October 25, 2002, Karras filed the instant habeas corpus petition. In his petition, Karras claims ineffective assistance of trial counsel, trial court bias, prosecutorial misconduct, and that the state failed to prove guilt beyond a reasonable doubt.

## DISCUSSION

The review of Karras' petition for writ of habeas corpus is governed by 28 U.S.C. § 2254 ("section 2254") as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal habeas court's role in reviewing state prisoner applications was modified by AEDPA to prevent "retrials" and to ensure that state court convictions are given effect to the extent possible under the law. *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000). Federal courts may grant a writ of habeas corpus if a person is held in custody under a state court judgment in violation of the United States Constitution. *Kavanagh v. Berge*, 73 F.3d 733, 735 (7th Cir. 1996).

### I. Procedural Default

Before the Court addresses the merits of the claims raised, it must first determine whether Karras' claims are properly before the Court. A habeas petitioner must exhaust all remedies available in state court and avoid procedural default. *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). A petitioner's failure to exhaust all state remedies bars consideration of the petition. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Failure to raise all claims during the course of the state court proceedings bars consideration of those claims not raised. *Id.*

Each claim must be fully and fairly presented to the state courts, giving those courts the

first opportunity to consider the claim. *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). "A petitioner presents his claims fully 'by pursuing all available avenues of relief provided by the state before turning to the federal courts.'" *Id.* (quoting *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998)). The Supreme Court explained that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, "one complete round" is finished once the petitioner has presented his claims either on direct appeal or on post-conviction review at each stage of the appellate process, up through and including the Illinois Supreme Court. *Id.* at 847-48.

A procedural default occurs when: (1) the petition fails to raise an issue on direct or post-conviction review, or (2) the state court has disposed of the claim on an independent and adequate state law grounds. *See Rodriguez*, 63 F.3d at 555; *see also Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Procedural default may be excused if the petitioner can show good cause for the default and actual prejudice resulting therefrom, or demonstrate that the failure to consider the respective claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

To show cause as part of the cause-and-prejudice test, the court usually considers whether the prisoner can show that some objective factor external to the defense impeded defense counsel's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, the court considers whether the petitioner has met his "burden of showing, not merely that the errors at his trial created a *possibility* of prejudice but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis

7

in original); *see Ouska v. Cahill-Masching*, 246 F.3d 1036, 1050 (7th Cir. 2001).

A fundamental miscarriage of justice occurs when a constitutional violation has probably led to the conviction of an individual who is actually innocent. *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000). Without new evidence of innocence, even a meritorious constitutional claim is not enough, in and of itself, to permit a federal court to reach the merits of a procedurally defaulted claim. *Schlup v. Delo*, 513 U.S. 298, 316 (1995). To be credible, such a claim requires petitioner to support his allegations by introducing new reliable evidence "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" which was not presented at trial. *Id.* The requisite probability is established by showing that "it is more likely than not that no reasonable juror would have convicted him in light of newly discovered evidence of innocence." *Id.* at 327 (internal quotations omitted). This probability determination is a mixed question of law and fact. *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 552 (7th Cir. 2001).

The State contends that a number of Karras' claims are procedurally defaulted. Petitioner's claim of ineffective assistance of trial counsel was raised in his petition for post-conviction relief. However, Petitioner failed to raised this issue in his petition for leave to appeal to the Supreme Court. As stated above, in order to preserve properly issues of review and avoid procedural default, a petitioner must give the state courts the opportunity to resolve constitutional issues by "invoking one complete round of the State's established review process." *O'Sullivan*, 526 U.S. at 845. This has been applied to petitioners who fail to raise issues before the Illinois Supreme Court during the post-conviction process. *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999). In his reply brief, Petitioner asserts that this claim is not procedurally defaulted because he raised it in a second petition for leave to appeal. Petitioner claims that he

was never informed that the consolidation of his direct appeal and post-conviction appeal required him to consolidate both of his petitions for leave to appeal. However, Petitioner did know that the cases were consolidated on appeal, as he admits this in his petition for leave to appeal. He claims that he could not have addressed this issue in the first petition for leave to appeal because his counsel's motion to withdraw was pending. Petitioner's rationale does not establish cause to excuse the default. As mentioned above, sufficient cause to excuse default is an "objective factor external to the defense" which precludes the petitioner from pursuing his claims in state court. *Murray*, 477 U.S. at 488. Ignorance of the law is not an "objective factor external to the defense" that excuses a petitioner from neglecting to include his claims in his first petition for leave to appeal. *Id.* The "failure to act or think like a lawyer" is not considered cause for neglecting to assert a claim. *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990).

Petitioner further alleges in his reply brief that refusal to hear his claims in his second petition for leave to appeal would result in a fundamental miscarriage of justice. However, Petitioner does not explain this assertion. He does not show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence, he merely states this as the requirement of the standard. He likewise does not introduce any new reliable evidence to show a fundamental miscarriage of justice. Petitioner has waived his claim of alleged ineffective assistance of trial counsel by not presenting this claim in his petition for leave to appeal to the Illinois Supreme Court and by not showing cause or prejudice or a fundamental miscarriage of justice; therefore, this Court is barred from considering this claim.

Petitioner's claim of prosecutorial misconduct was not raised at any level of the Illinois state courts. In his reply brief, Petitioner contends that this issue was raised in his petition for post-conviction relief. However, the only issue Petitioner raised in his post-conviction petition

9

was ineffective assistance of trial counsel. Again, Petitioner contends that this issue was raised in his second petition for leave to appeal. As discussed above, Petitioner's mistaken belief about consolidating his petitions for leave to appeal is not sufficient to show cause and excuse his default. Petitioner's failure to raise this claim at any level of the Illinois state courts clearly results in the claim being procedurally defaulted, and this Court will not consider this claim.

Petitioner's next claim, that the state failed to prove his guilt beyond a reasonable doubt, was raised in the Appellate Court in his direct appeal. The State contends that this claim is procedurally defaulted because it was not raised in his petition for leave to appeal. However, upon closer scrutiny of his petition for leave to appeal, it appears that this claim was raised. Although this issue was not in Petitioner's heading, it was raised within the petition. In the petition, Petitioner claims that the trial court erred in finding the complainant's version of the incident more credible than his because, according to Petitioner, the complainant was impeached on the witness stand. Within this argument, Petitioner discusses the requirement that the state prove guilt beyond a reasonable doubt to avoid violating the Due Process Clause of the Fourteenth Amendment. His main contention is that the trial court was wrong to believe the complainant's testimony over his. Petitioner appears to be faulting both the trial court judge and the state in failing to prove guilt beyond a reasonable doubt. Petitioner is blurring the line between the trial court and the prosecution. Because he is proceeding as a pro se litigant, the Court will give Petitioner the benefit of the doubt and find that his claim that the State failed to prove guilt beyond a reasonable doubt is not procedurally defaulted.

Petitioner's claim that the trial court was biased against him is not procedurally defaulted because it was raised on appeal and in his petition for leave to appeal to the Supreme Court. Petitioner asserts that the trial court acted improperly in acting as a prosecutor, restricting the

defense's cross examination, and incorrectly remembering the testimony.

## II. Merits of Petition

A federal habeas corpus review of the state court's determinations is limited. Under 28 U.S.C. § 2254, a petitioner must demonstrate that the claim was adjudicated on the merits in state court and "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

The "contrary to" provision pertains to questions of law which the court reviews *de novo*. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999). The "unreasonable application" provision applies to mixed questions of law and fact, to which the federal court grants deference to reasonable state court decisions. *Id.* at 522-23. Under section 2254(d)(2), the "unreasonable determination of the facts" provision relates to pure questions of fact. *Hall v. Washington*, 106 F.3d 742, 752 (7th Cir. 1997). Moreover, section 2254 instructs the reviewing federal habeas court to presume that the state court's factual determinations are correct unless petitioner can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Schaff*, 190 F.3d at 521.

Under the "contrary to" clause, a federal court is "free to express independent opinion" on whether a state court has deviated from the constitution on a legal question in contravention of United State Supreme Court precedent. *Lindh v. Murphy*, 96 F.3d 856, 861 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997). This has been interpreted to mean that a

11

federal habeas court may grant relief if the state court (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405.

Under the "unreasonable application" provision, a federal habeas court cannot express the same type of independent opinion allowed under the "contrary to" clause. *Lindh*, 96 F.3d at 871. When determining whether the state court's application of the law was "unreasonable," the federal courts must "take into account the care with which the state court considered the subject." *Id.* If the state court offers a "responsible, thoughtful answer" after "a full opportunity to litigate" the issue, a federal habeas court must accept that answer as "adequate to support the judgment" even if it believes the state court decision is wrong. *Id.* However, a federal court may grant relief if the state court identifies the correct legal principle from among Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. *Williams*, 529 U.S. at 412-13. When determining an unreasonable application of clearly established federal law, an objective standard should be employed. *Id.* at 409. Most importantly, for habeas corpus review purposes, an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* at 410.

Two of petitioner's claims, that the state failed to prove guilt beyond a reasonable doubt and that the trial court was biased, are not procedurally defaulted and, thus, will be reviewed on their merits. Because petitioner's claim regarding proof beyond a reasonable doubt comes down to the argument that the trial court was wrong to believe the complainant's testimony over his, this Court will consider the claims together.

First, petitioner asserts that he was not proven guilty beyond a reasonable doubt. The

12

Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state court conviction will withstand a due process attack on sufficiency of the evidence grounds if the federal habeas corpus court determines, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The standard of review recognizes the trier of fact's responsibility to resolve reasonably conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 318.

The court is not at liberty to "make its own subjective determination of guilt or innocence." *Id.* at 319 n.13. The habeas court does not substitute its judgment for that of the finder of fact. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). The reviewing court also does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir. 1993). Determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989).

A federal court exercising habeas jurisdiction must accord a "presumption of correctness" to factual determinations of state courts so long as the factual findings are fairly supported by the record. *Sumner v. Mata*, 449 U.S. 539, 547 (1981). Since the sufficiency of evidence is a mixed question of law and fact, "a writ of habeas corpus may be issued for evidence insufficiency only if the state courts have unreasonably applied the *Jackson* standard."

*Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1997), *rev'd on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1997). If the state courts provided a fair process and engaged in reasoned, good-faith decision-making when applying the *Jackson* test, then a federal court cannot second-guess their determination of sufficiency of evidence. *Gomez*, 106 F.3d at 199; *see Jackson*, 443 U.S. at 319.

The state appellate court in this case used the proper standard when evaluating Petitioner's claim regarding legally insufficient evidence. The court set forth the evidence presented at trial against Petitioner.

> Here, complainant testified that she had just left her sister's residence in the early morning hours of a winter day when she was attacked by defendant who dragged her into a gangway and raped her. Complainant's conduct thereafter is unusual in that she accompanied defendant, whose anger had subsided, until seeking assistance of the van driver. Her conduct is explainable though because she thought he had a gun, and there did not appear that assistance was readily available at that time of day. The fact that she told the van driver and bystander that she had been robbed without mentioning the rape could have been due to her embarrassment. As the trial court noted, this case was decided on witness credibility, and we do not find a basis to question that determination.

*People v. Karras*, Nos. 1-99-2006 & 1-00-2530, at 12-13 (1st Dist. May 14, 2001).

Therefore, the Illinois Appellate Court examined the evidence against Petitioner and employed the proper *Jackson* standard in its analysis. Moreover, the court's application of the *Jackson* standard was within the bounds of reasonableness. As stated above, determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *Saunders*, 886 F.2d at 60. Therefore, Petitioner's habeas claim based on legally insufficient evidence is denied.

Petitioner's next interrelated ground in his petition for a writ of habeas corpus is that the trial court was biased against him. Petitioner asserts that the trial court acted improperly in

acting as a prosecutor, restricting the defense's cross examination, and incorrectly remembering the testimony.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant, as any litigant, the right to a fair trial in a fair tribunal. *In re Murchison,* 349 U.S. 133, 136 (1955). The Supreme Court's decision in *Liteky v. United States,* 510 U.S. 540, 552 (1994), provides the standard for deciding judicial bias claims and applies to habeas corpus petitions. *Ortiz v. Stewart,* 149 F.3d 923, 939-40 (9th Cir. 1998). *Liteky* holds:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky,* 510 U.S. at 555-56.

Furthermore, "[t]rial judges retain great discretion to impose reasonable limits on the cross-examination of witnesses based on concerns such as harassment, prejudice, confusion of the issues, the witness's safety, and marginal relevancy." *Norris v. Schotten,* 146 F.3d 314, 329 (6th Cir. 1998) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). The trial judge abuses this discretion when she allows some cross-examination of a prosecution witness but does not permit defense counsel to expose the jurors to facts from which they could appropriately draw inferences relating to the reliability of the witness. *Norris,* 146 F.3d at 330 (citing *Delaware v. Fensterer,* 474 U.S. 15, 19 (1985)).

After reviewing the record, it is clear that the trial court did not show bias against Karras. Nothing in the record reveals that the trial court acted as a prosecutor in any way. Likewise, the record does not support Petitioner's contention that the trial court

15

restricted the defense's cross examination. Also, the record does not show that the trial court judge incorrectly remembered any testimony during the trial.

Furthermore, Karras' claims for judicial bias have already been considered and rejected by the Illinois Appellate Court. The Appellate Court having rejected these contentions on the merits, this Court can only grant Karras' petition if the court's determination was contrary to, or an unreasonable application of, Supreme Court case law. 28 U.S.C. § 2254(d); *see Dean v. Cockrell*, No. 3:01-CV-1102-H, 2003 WL 21467571, at *1 (N.D. Tex. June 23, 2003). The Appellate Court found no basis to find that the trial judge was biased against Karras based on his interpretation of the trial court's remarks or that the court misstated any material evidence against him. The Appellate Court found that the trial court did not limit Karras' ability to cross-examine the complainant or present evidence in his defense and that the trial court even delayed sentencing to give Karras the opportunity to present evidence to challenge the complainant's version of what happened. Karras has failed to show that the Appellate Court's decision was contrary to or an unreasonable application of United States Supreme Court precedent. Having reviewed the trial court record and the appellate court's disposition of Karras' claim regarding trial court bias, Petitioner's habeas claim on this ground is denied.

## CONCLUSION

For the reasons stated above, the Court hereby grants respondent's motion to dismiss the petition for a writ of habeas corpus. This case is hereby terminated.

**SO ORDERED**          **ENTERED:** 3/19/04

*[signature]*
**HON. RONALD A. GUZMAN**
**United States Judge**